UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

PATRICK D. PARIS,                    )
                                     )
        Petitioner,                  )
v.                                   )        No. 1:07-cv-65
                                     )        Mattice/Lee
HOWARD CARLTON, Warden               )
                                     )
        Respondent.                  )

## MEMORANDUM

This is a petition for the writ of habeas corpus brought pursuant to 28 U.S.C. § 2254 by Patrick D. Paris ("Petitioner") [Court Docs. 1 & 2]. Petitioner seeks review of his 2001 state convictions for one count of first degree murder and one court of especially aggravated robbery. The petitioner raises several issues, and Respondent has filed an Answer (Court Doc. 20) which argues that the claims must be dismissed based on procedural default or the deferential review standards set forth in § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Because Respondent requests the dismissal of the procedurally defaulted claims and summary judgment on the remaining claim, on the grounds that the state court conclusion does not violate the standard set forth in *Williams v. Taylor*, 529 U.S. 362, 405 (2000), the Court has construed the Answer as a motion for summary judgment, to which Petitioner has filed a response [Court Doc. 21]. Thus, the case is ripe for review.

After reviewing the record and the applicable law, the Court concludes that Petitioner's § 2254 petition and supplement [Court Docs. 1 & 2] will be **DISMISSED** and Respondent's motion for summary judgment [Court Doc. 20] will be **GRANTED**.

## I. STANDARD OF REVIEW—HABEAS CLAIMS COGNIZABLE UNDER 28 U.S.C. § 2254

Petitioner may obtain habeas relief if he can demonstrate he is in custody pursuant to the judgment of a state court in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254. Under Rule 8 of the Rules Governing Section 2254 Cases in the United States Districts Courts, the Court is to determine, after a review of the response, the transcript, the record of state court proceedings and the expanded record, whether an evidentiary hearing is required. If a hearing is not required, the district judge is to dispose of the case as justice dictates. The Court finds it is unnecessary to hold an evidentiary hearing in the instant case.

Section 2254(d), as amended by Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), limits a federal district court's jurisdiction to review habeas claims on the merits. In particular, a court considering a habeas claim must defer to any decision by a state court concerning that claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). *See Williams v. Taylor*, 529 U.S. 362, 411 (2000) (interpretation of the language of § 2254).

In reviewing a state court's adjudication of a habeas claim, the federal district court must presume the state court's factual determinations were correct. 28 U.S.C. 2254(e)(1). The petitioner may rebut this presumption of correctness by clear and convincing evidence. *Id*.

At the outset, the Court notes that because claims not raised in state court are procedurally barred from habeas review unless a petitioner can show cause and prejudice from that default, or actual innocence, *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991), neither of which Petitioner has shown, the Court will address the claims in this habeas petition only to the extent they were raised in the state appellate court.

## II.    PROCEDURAL BACKGROUND

A Hamilton County, Tennessee  jury convicted Petitioner of first degree murder and especially aggravated robbery.  Petitioner was sentenced by the jury to a term of life imprisonment without the possibility of parole for the murder conviction and to 24 years for the especially aggravated robbery conviction with the sentences to run consecutively to one another.  *State v. Paris*, No. E2002-01514-CCA-R3-CD, 2003 WL 21748682 (Tenn. Crim. App., July 29, 2003).  Petitioner appealed his conviction, contending the trial court erred when it failed to suppress his December 2, 1998, statement; improperly charged the jury concerning criminal responsibility; and erroneously used his prior conviction as an aggravating factor during sentencing. *Id*. at *2.

The Tennessee Court of Criminal Appeals affirmed the first degree murder and especially aggravated robbery convictions and sentences, and the Tennessee Supreme Court denied permission to appeal on December 22, 2003.  Petitioner filed a petition in state court for post-conviction relief.  Petitioner appealed the denial of his petition, claiming the post-conviction court erred in not stating its findings of fact and conclusions of law in its order denying his post-conviction petition and that counsel was ineffective for failing to request the removal of Juror Daisy Foster; questioning Marco Brooks about his family's

criminal history; failing to adequately investigate and prepare for trial; and failing to object to the prosecutor's leading questions during Mr. Brooks direct examination. The appellate court affirmed the trial court's denial of post-conviction relief. The Tennessee Supreme Court denied Petitioner's application for permission to appeal on January 9, 2006. Petitioner filed the instant federal habeas corpus petition on March 21, 2007.[1]

## III.    FACTUAL BACKGROUND

The Tennessee Court of Criminal Appeals summarized the facts on direct appeal as follows:

> On August 24, 1998, the dead body of Michael Lawrence was found in a dumpster in a Cleveland, Tennessee apartment complex. Fingerprints found at the scene led police to the defendant, Patrick Deshun Paris. On August 25, 1998, after being advised of his Miranda rights, the defendant gave a statement to Chattanooga Detective Michael Mathis, denying any involvement in the shooting or disposal of the victim. During the same interview, the defendant also said that a Jamaican drug dealer from Chattanooga killed the victim in his sleep. Later in the interview, the defendant said the same drug dealer killed the victim in his car. Subsequently, the defendant was charged with the killing.
>
> On September 19, 1998, the defendant met with the District Attorney General in order to give information about other crimes in return for the State not seeking the death penalty in the instant case. This meeting lasted about eight hours, with defense counsel present for only the first three hours. Ultimately, the information gathered from the defendant at this meeting was suppressed by the trial court.
>
> On November 18, 1998, the defendant was indicted on one count of abuse of a corpse, one count of especially aggravated robbery, one count of premeditated murder, and one count of felony murder. Also that day, while still in custody, the defendant left a message for Detective Mathis that the defendant had information about the death of a state trooper and that he wanted to talk. On December 2, 1998, Detective Mathis had the defendant brought to the police department to discuss the matter. The defendant's

---

[1]    The Court previously determined the instant petition for habeas corpus relief is not barred by the one year statute of limitation due to equitable tolling [Court Doc. 14].

attorney was not present during this interview and what happened at this point is controverted.

It is the State's position that the defendant initiated the conversation, and during the conversation, without the police specifically questioning him about it, the defendant said he was the triggerman in the shooting of Michael Lawrence. The defendant denies that he initiated the conversation and denies that he admitted to being the triggerman in the Lawrence murder. Additionally, he claims that he immediately discontinued all discussions when Detective Mathis questioned him about the matter and that he requested his attorney. The admission of this incriminatory statement is, *inter alia*, at issue on appeal.

Prior to the jury trial, the defendant pled guilty to abuse of a corpse. Following the jury trial on May 19, 2001, the defendant was convicted of first degree premeditated murder, first degree felony murder, and especially aggravated robbery. The jury then sentenced the defendant to life without the possibility of parole for the two murder convictions, which were merged. On August 20, 2001, the defendant was sentenced as a Range I, violent offender to twenty-four years for the especially aggravated robbery, to run concurrently with his sentence for abuse of a corpse.

*State v. Paris,* 2003 WL 21748682, 1 -2  (Tenn.Crim.App.,July 29, 2003).

## IV.    ANALYSIS

### A.    Suppression of Statement

Petitioner claims that, for several reasons, the trial court erred in failing to suppress his December 2, 1998, incriminatory statement to law enforcement officers.   The first two reasons involve credibility: Petitioner denies that he made a statement to Detective Mathis about the Cleveland murder case during the December 2, 1998, meeting,[2] or that he ever confessed to being the "triggerman" in that murder.   Third, he argues that the statement was taken in violation of his Fifth and Sixth Amendment Rights.   Finally, he challenges the statement on numerous grounds which were not raised in state courts.

---

[2]        For the sake of clarity, the Court will refer to his instant conviction as the Cleveland murder case and the case about which he contends he spoke with law enforcement during this meeting as the trooper case.

As previously noted *supra*, claims not raised in state court are procedurally barred from habeas review unless a petitioner can show cause and prejudice from that default, or actual innocence, *Coleman v. Thompson*, 501 U.S. 722, 734-35 (1991), neither of which Petitioner has shown. Therefore, the Court will address this claim as it was offered to the state appellate court—that Petitioner's statement was the product of a non-Mirandized custodial interrogation that violated his rights against self-incrimination and right to counsel.

At the outset, the Court notes that the overruling of *Michigan v. Jackson,* 475 U.S. 625 (1986) appears to have effectively eliminated any distinction between the Fifth Amendment and Sixth Amendment waiver of the right to counsel. *Montejo v. Louisiana*, 129 S.Ct. 2079 (2009) (The Court concluded the combination of *Miranda, Edwards,* and *Minnick v. Mississippi* adequately protected the Sixth Amendment right).[3] Nevertheless, out of an abundance of caution and because Petitioner raised the claim as a separate Fifth Amendment and Sixth Amendment claim at state court, the Court will address each of those claims separately.

1.    *Background of Motion to Suppress*

Following a hearing on the motion to suppress, the trial court concluded Petitioner initiated the conversation; knew of his right to counsel; knew the conversation was not an interrogation or a custodial interrogation; and that the statement was voluntary [Addendum No. 1C, pp. 91-92]. Based on these findings, the trial court denied the motion. When the claim was advanced in the state appellate court, it found no error on the part of the trial

---

[3]        It is important to note, however, "that the *Miranda-Edwards* regime . . . applies only in the context of custodial interrogation. If the defendant is not in custody then those decisions do not apply; nor do they govern other, noninterrogative types of interactions between the defendant and the State[.]" *Id.* at 2090.

court when it credited the testimony of Detective Mathis over that of Petitioner and ultimately found no error in the rejection of the suppression motion (Court Doc. 7-1).

### 2.     Applicable Law for Fifth Amendment Claim

#### a.     Credibility Issues

Petitioner challenges the trial court's accreditation of Detective Mathis's testimony over his. This is a factual finding which is presumed correct, unless Petitioner offers clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). And when assessing witness credibility, the trier-of-fact's credibility determinations are entitled to the presumption of correctness. *See Seymour v. Walker*, 224 F.3d 542, 551-52 (6th Cir. 2000); *Smith v. Jago*, 888 F.2d 399, 407 (6th Cir. 1989). Since there is no clear and convincing evidence to refute the state court's fact-findings and credibility determinations, to the extent Petitioner's and Detective Mathis's testimonies conflict, the Court accepts as true the testimony of Detective Mathis. Thus, even though Petitioner testified he never admitted to pulling the trigger in the Cleveland murder case and that in fact, they never talked about his pending murder case at all, Detective Mathis' testimony that Petitioner admitted to being the triggerman in the Cleveland murder case is a factual finding binding on this Court.

#### b.     Constitutional Protections and Case Law

The facts of this case and the issue formulated by Petitioner are somewhat convoluted given the interplay between the Fifth and Sixth Amendment claims. Under Supreme Court precedent, "once the adversary judicial process has been initiated, the Sixth Amendment guarantees a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings. . . . [and] [i]nterrogation by the State is such a stage." *Montejo*

*v. Louisiana,* 129 S.Ct. 2079, 2085 (2009) (citations omitted). The Fifth Amendment privilege against self-incrimination includes an implied right to counsel. *Miranda v. Arizona*, 384 U.S. 436 (1966). Though *Miranda* and its progeny, including *Edwards v. Arizona*, 451 U.S. 477 (1981), protects Fifth Amendment and not Sixth Amendment rights, "[w]hat matters is that these cases . . . protect the right to have counsel during custodial interrogation—which right happens to be guaranteed (once the adversary judicial process has begun) by two sources of law." *Montego v. Louisiana*, 129 S.Ct. at 2090 (citations omitted). The right to counsel under either amendment may be waived and "doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver." *Id.* "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled. *Id.* (Citations omitted).

The Fifth Amendment to the United States Constitution guarantees that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. While this amendment does not guarantee a criminal defendant the right to counsel, in certain pretrial stages—namely custodial interrogation—the privilege against self-incrimination, as discussed earlier, includes an implied right to counsel. *See Miranda*, 384 U.S. 436 (1966). Therefore, to effectuate these constitutional protections, a suspect must be informed of certain rights before he is subject to custodial interrogation. *Id.* at 444 (An individual taken into custody for questioning must be advised of his rights to be free from compulsory self-incrimination and to have the assistance of counsel). The *Miranda* safeguards are not automatically triggered when a suspect is questioned; instead, the

*Miranda* warnings are required only when a suspect is interrogated while "in custody" or "otherwise deprived of his freedom in any significant way." *Id.* at 444. Moreover, custodial statements that do not result from interrogation, i.e., volunteered statements, do not require *Miranda* warnings and are not barred by the Fifth Amendment.

Interrogation has been defined by the Supreme Court as any police questioning of a suspect in custody "reasonably likely to elicit an incriminating response." *Rhode Island v. Innis*, 446 U.S. 291, 301 n. y, 302 n. 8 (1980). In cases arising under the Fifth Amendment, the Supreme Court has held that a waiver of the right to counsel is valid if the waiver was made with a "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Patterson v. Illinois*, 487 U.S. 285, 292 (1988) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986). In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Supreme Court established the following rule to protect the Fifth Amendment–based *Miranda* right to have counsel present at any custodial interrogation: "[Once] an accused has invoked his right to have counsel present during custodial interrogation . . . [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484-85.

### 3. Analysis of Fifth Amendment Claim

To determine whether the statement should have been suppressed for Fifth Amendment purposes, the Court must first determine whether Petitioner was in custody and, second, whether he was subjected to interrogation. The state court's determination that Petitioner was not in custody at time of the meeting for *Miranda* purposes is not entitled to

the statutory presumption of correctness during federal habeas review because it is a mixed question of law and fact which warrants independent review by this federal habeas court. *Thompson v. Keohane*, 516 U.S. 99 (1995).

a. <u>Was Petitioner in custody</u>?

"Custody occurs either upon formal arrest or under any other circumstances where the suspect is deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The only relevant inquiry in determining whether a person is in custody, "is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

In this case, Petitioner was incarcerated and upon his request, Detective Mathis arranged to have him transported to the police service center where he made the admission that he was the triggerman in his pending murder case. Petitioner was dependent on Detective Mathis for transportation back to jail. There is no doubt that Petitioner was in custody, although not necessarily "in custody" as contemplated by *Miranda*. *See Maryland v. Shatzer*, 130 S.Ct. 1213 (Feb. 24, 2010) (discussing the difference between *Miranda* custody and incarceration pursuant to conviction). Nevertheless, for the sake of this discussion, the Court will presume, without deciding, that Petitioner was in custody for purposes of *Miranda*. Thus, the Court must determine whether Petitioner's admission that he was the triggerman in his murder case resulted from custodial interrogation. *See Illinois v.Perkins,* 496 U.S. 292, 297 (1990) ("It is the premise of *Miranda* that the danger of coercion results from the interaction of custody and official Interrogation").

### b.    *Was Petitioner subjected to custodial interrogation*

Interrogation has been defined as any express police questioning of a suspect in custody or "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis*, 446 U.S. 291,301 (1980), which is "initiated by law enforcement officers."  *Miranda*, 384 U.S. at 444.  The test for determining whether questioning is "interrogation" within the meaning of *Miranda* is whether, under all of the circumstances involved in a given case, questions are reasonably likely to elicit an incriminating response from the suspect.  *See Rhode Island v. Innis,* 446 U.S. at 300-01. And, there must be "a measure of compulsion above and beyond that inherent in custody itself."  *Id.* at 300.   Therefore,  when a defendant in custody makes a voluntary statement without being questioned or pressured, "the statements are admissible despite the absence of *Miranda* warnings."  *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997) (citing *United States v. Montano*, 613 F.2d 147, 149 (6th Cir. 1980).

In the instant case, Petitioner admits he contacted the police department and left a message that he wished to speak with law enforcement.  The message referenced both the Cleveland murder and the trooper cases, but Petitioner testified that he only said he wanted to talk about the trooper case.

Detective Mathis waited approximately two weeks before responding to Petitioner's request to meet with law enforcement.  Petitioner points to that specific fact as the centerpiece of his contention that the contact was initiated by the police and not by him.

Essentially, Petitioner is making a "staleness" argument, i.e., that the 2-week lapse between his request and the occurrence of the meeting somehow obviates the fact that he initiated the conversation when he called the police service center and left a message that he wished to speak with law enforcement. Petitioner points to no Supreme Court case which requires the conclusion that he did not initiate the contact, and at any rate "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1419 (2009) (citations and internal quotations marks omitted) . Since there was no specific legal rule established by the Supreme Court at the pertinent time which mandated the result urged by Petitioner, the Court concludes Petitioner, and not law enforcement, initiated this contact.[4] *See Carey v. Musaladin*, 549 U.S. 70, 77 (2006) ("Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." § 2254(d)(1)").

Given the lack of Supreme Court precedent requiring police to meet with a defendant within a certain time-frame from the time the defendant initiates contact, the Court concludes Petitioner, and not law enforcement, initiated this contact because Petitioner's initiation was

---

[4]     However, the Sixth Circuit held, in *United States v. Whaley*, 13 F.3d 963, 968 (6thCir. 1994), that a defendant who may or may not have initiated a contact with the police "did nothing else during the succeeding three week period, his actions certainly do not show a willingness and a desire to speak generally about his case[, thus] . . . when . . . [he was removed] from his cell and interrogated . . . without counsel present," his constitutional rights were violated. Whaley was in a holding area when he told an ATF agent he wanted to talk to him about his arrest, to which the officer responded you need to talk to the guy handling your case and three weeks later the officer handling his case, pursuant to the verbal message he received from the AFT agent that Whaley wanted to talk to him, had Whaley removed to a private room to be interviewed. *Id.* at 968. To the extent that the holding in *Whaley* survives *Maryland v. Shatzer*, it is not Supreme Court precedent, as AEDPA requires and, for this reason, cannot support habeas relief here.

-12-

not vitiated by the two week lapse between the time he contacted law enforcement and when they transported him to meet.  Therefore, on this issue, the state court's determination was not contrary to or an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.  *See Owens v. Bowersox*, 290 F.3d 960, 963 (8th Cir. 2002) (observing that "the state's position undoubtedly would be stronger if Mr. Owens himself had contacted the police," the habeas court concluded the state court's finding that petitioner initiated contact through his mother was not an unreasonable application of relevant Supreme Court precedent).

Initiation is one persuasive circumstance, but in and of itself is not enough to demonstrate the lack of custodial interrogation.  More information is required to determine whether there was custodial interrogation.  One indication that it was not, is that neither party described the meeting as an interrogation, but instead described it as a conversation and discussion [Addendum No. 1C, pp. 34-77].

Petitioner detailed the meeting in his testimony at the suppression hearing on direct and during cross-examination as follows:

> First we had went on and they greeted me right then and there.  I sat down. They started - - we had some conversation and I asked when my lawyer was going to be there.  We kept on talking.  I said, "Let me call him."  When I had called Mr. Brooks, Mr. Brooks played like he didn't know what was going on. I told him I was out at the service center.  Then that's when they tried to go into questions and I told them no.  We was just talking about the trooper case.
>
> When I walked in there, I walked right into his office and they started discussion and they greeted me right then and there.  That's when I looked around to see if my lawyer was there and he wasn't present.  And we started talking, just like me and you talking right here.  Just a conversation.  Wasn't no recorded statement, didn't sign anything, had no rights or anything.  We was just talking.  I said, I asked, "Where is Mr. Brooks at?"  They said, "Mr. Brooks ain't here."  I said right then and there, I had picked up the phone, said, "Can I use the phone."  The phone is back here and I used the phone.  When I

called Mr. Brooks, he played like, "What's going on." I said, "I am out here at the police station." I said, "Why ain't you out here?" I [sic] said, "I'll be on my way."

So then that's when me and Mike Mathis start back talking and stuff like that because I am familiar with Mr. Mathis. We started talking and having conversation. I really wouldn't mention anything about the Cleveland case. We started talking about the trooper case. He brought other people in there who was on the case and he asked me what was going on with the trooper case so I told him the information I had. We just started talking. Mr. Brooks didn't show up so they tried to go into my case. I told them I don't want to talk about that. That's when they said this is it, we don't want to talk to you no more, can't come back here, this is it. They put me in the SWAT van and sent me back to jail. I ain't talked to them any more.

[Addendum No. 1C, pp. 48-56].

When asked whether he understood he had a right to an attorney on the date he spoke with Detective Mathis, Petitioner responded, "That particular day I wasn't going down there and talk about my case. I was just going down to talk about the trooper case. . . . It wasn't going to be no confession or none that day." [*Id.* at p. 63]. Later, Petitioner acknowledged that he understood he had the right to an attorney during this meeting; that he understood his rights; but he chose to talk to the police anyway waiting on his attorney because "[i]t was just like a neutral con - - just like me and you over there somewhere just talking, having a neutral conversation. That's all." [*Id.* at 63-64]. When asked whether the conversation was related to the Cleveland murder case, he responded that it was not but that as soon as Detective Mathis asked him about the Cleveland murder case, he remained silent and terminated the conversation [*Id.*].[5]

---

[5] As previously noted, this Court is bound by the state court's credibility finding that Petitioner did, in fact, admit his guilt, since he has not rebutted the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Detective Mathis testified they were discussing the trooper case when Petitioner started talking about his own case. Detective Mathis explained it was not a question and answer session but rather, Petitioner "acknowedge[d] that he had told us a lot of lies during this alleged eight-hour interview and statement and talks about what some of those inconsistencies were. At a point during that, [he] makes a statement acknowledging, and he used the word, he was the triggerman on Michael Lawrence." [Addendum 1C, p. 69].

To determine whether a statement was made involuntarily, courts look to the "totality of the circumstances concerning whether a defendant's will was overborne in a particular case." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999). The purpose is to determine whether law enforcement coerced statements from the detainee, thus rendering the statements involuntary. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

In this case, Petitioner does not claim that he was interrogated or threatened and coerced into making an involuntary statement and the record does not reveal any such conduct. Nor does it reflect that Petitioner made anything other than a voluntary statement during the meeting he initiated. Instead, the record shows that the environment, both before and during the conversation, was cordial and not coercive or threatening.

Petitioner has the burden of establishing that custodial interrogation occurred. *See United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003) (in seeking to suppress evidence burden on defendant to demonstrate a constitutional or statutory violation); *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir.) (defendant must show confession was result of custodial interrogation but government then has burden of proving voluntary waiver).

Therefore, based on Petitioner's testimony and due to the lack of threats, coercion, and interrogation, the Court concludes Petitioner's statement admitting he was the triggerman in his murder case, which was made at the police service center without being advised of his *Miranda* rights, was made voluntarily and was not the result of interrogation. Accordingly, the state trial court did not unreasonably apply relevant Supreme Court precedent when it determined Petitioner initiated contact with law enforcement; he was not subjected to custodial interrogation; he made a voluntary statement, he was not denied his right to counsel, and denied Petitioner's motion to suppress. Accordingly, Petitioner's Fifth Amendment claim will be **DISMISSED**.

4. *Sixth Amendment Claim*

Petitioner also claims that his Sixth Amendment right to counsel was violated when Detective Mathis, knowing he had previously invoked his right to counsel during the previous meeting with law enforcement, had him transported to the police service center and interrogated him without first notifying his attorney.

a. <u>Law Applicable to Sixth Amendment Claim</u>

The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. A criminal prosecution has been initiated when a formal charge, preliminary hearing, indictment, information, or arraignment has been filed or has occurred. *See Kirby v. Illinois*, 406 U.S. 682, 688 (1972) ("Sixth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him"). The Supreme Court explained in *Fellers v. United States*, 540 U.S. 519 (2004) that it had

-16-

previously "held that an accused is denied the basic protections of the Sixth Amendment when there is used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id.* at 523 (internal quotation marks and citations omitted). However, the Sixth Amendment does not bar post-indictment questioning in the absence of counsel if a defendant waives the right to counsel. *See Patterson v. Illinois*, 487 U.S. 285 (1988).

The relevant question here, therefore, is whether Petitioner voluntarily waived his right to counsel. The burden of proving "an intentional relinquishment or abandonment of a known right or privilege," rests with the State. *Brewer v. Williams,* 430 U.S. 387, 404 (1977) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Whether Petitioner waived his constitutional right to counsel is an issue of federal law. Thus, in this habeas proceeding, the question of waiver of counsel is not a question of historical fact, but rather one which requires the application of constitutional principles to the facts as found. *Brewer v. Williams*, 430 U.S. 387 (1977).

The Supreme Court has instructed:

> To establish a waiver of the Sixth Amendment right to counsel, it is therefore not enough for the State to point to conduct—such as the initiation of a conversation—that demonstrates that the defendant's statements were made voluntarily. Since a Sixth Amendment violation does not depend upon coercion, the protection of the Sixth Amendment is not waived by conduct that shows only that a defendant's statements were not coerced. The State must show that the defendant intelligently and knowingly relinquished his right not to be questioned in the absence of counsel. The State can establish a waiver only by proving an intentional relinquishment or abandonment of the right to have counsel present.

*Wyrick v. Fields*, 459 U.S. 42, 54 (1984) (internal quotation marks and citations omitted).

A defendant initiates an interrogation if he "evince[s] a willingness and a desire for a generalized discussion about the investigation." *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983). However, the defendant's initiation of police interrogation, alone, is insufficient to demonstrate a voluntary waiver of the right to counsel. Instead, it is the circumstances as a whole, including the initiation, which determine whether the defendant voluntarily, knowingly, and intelligently waived his right to counsel. *See Oregon v. Bradshaw*, 462 U.S. at 1045-46.

The Supreme Court has instructed that the State need "prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). In *North Carolina v. Butler,* 441 U.S. 369, 373 (1979), the Court reiterated that defendants are presumed not to waive their rights, but made clear that even though a state's burden is great, a waiver need not be explicit, but rather may be "inferred from the actions and words of the [defendant]."[6] Although *Butler* was a case involving the right to counsel guaranteed by *Miranda*, the Court finds its analysis of what constitutes a waiver of such right instructive.

---

[6] The Supreme Court explained:

An express written or oral statement of waiver of the right to remain silent or of the right to counsel is unusually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. As was unequivocally said in *Miranda,* mere silence is not enough. That does not mean that the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver, may never support a conclusion that a defendant has waived his rights. The courts must presume that a defendant did not waive his rights; the prosecution's burden is great; but in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated.

*North Carolina v. Butler*, 441 U.S. at 373.

### b.    Waiver

It is uncontested that judicial proceedings had been initiated against Petitioner when he met with Detective Mathis and that he had previously invoked his right to counsel.   In addition, it is undisputed that Petitioner did not expressly waive his right to counsel, as Detective Mathis did not ask Petitioner if he wished to waive his right to counsel and he did not have him sign a waiver form during the December meeting.   It is well established, however, that an express waiver is not constitutionally required.  *North Carolina v. Butler*, 441 U.S. 369, 373 (1979); *United States v. Scarpa*, 897 F.2d 63, 68-69 (2nd Cir. 1990), *cert. denied*, 498 U.S. 816 (1990)  (implied waiver based upon evidence defendant "consistently chose to confront law enforcement officers without assistance," negotiated in his motel room with DEA agents for 45 minutes without contacting an attorney, though he had previously worked with attorneys).

Here, the facts surrounding the meeting Petitioner initiated support a clear inference that Petitioner waived his right to counsel and did so knowingly and voluntarily.  First, the evidence indicates Petitioner initially waived his right to counsel after being advised of his *Miranda* rights the day after the victim's body was found [Addendum 1E, p. 94].  Second, once he was charged with the murder, Petitioner invoked his right to counsel.  Third, during the interview where counsel was present for three hours, Petitioner waived his right to counsel and proceeded the discussion with law enforcement for almost five more hours without counsel.  Accordingly, there is no doubt that Petitioner knew of his right to counsel when he sought out and initiated contact with law enforcement.  The record clearly reflects

that during this criminal case, Petitioner had been informed of and appeared to understand his right to counsel [Addendum 1E, p. 93].

In addition, Petitioner first requested counsel to schedule the second meeting but after not hearing from counsel for approximately two weeks, Petitioner decided to initiate the meeting himself, because he had basically concluded counsel was not performing adequately [Addendum 1C, p. 46-65]. Therefore, the evidence before the Court reflects Petitioner decided to take matters into his own hands and to talk with law enforcement without counsel. Upon arriving at the police service center he allegedly called counsel and counsel said he was on his way.[7] However, rather than waiting until counsel arrived, Petitioner chose to speak with law enforcement without counsel, and as he describe it they had a very cordial conversation. The circumstances as reflected in the record, including Petitioner's own conduct and the fact that this meeting was not an interrogation, when viewed in light of Petitioner's assertion of his right to counsel, clearly demonstrates, by a preponderance of the evidence, that he knowingly and voluntarily waived his right to the assistance of counsel during his meeting with Detective Mathis and made a voluntary statement. Accordingly, the circumstances in this case provide no reasonable basis for finding Petitioner did not waive his right to counsel. Accordingly, the Court finds that there was no Sixth Amendment violation.

---

[7] Although Detective Mathis did not recollect whether Petitioner requested and called his attorney and he normally would have made a note of such a request in his notes, and no such notation was in his notes, Detective Mathis was unable to deny that such a request and call could have been taken place. [Addendum 1C, p. 66-69].

## B.      Denial of Competency Hearing/Evaluation

Petitioner contends the trial court erred in failing to conduct a competency hearing in his case.  Federal habeas corpus relief is available only if a petitioner first exhausts available state court remedies.  *See* 28 U.S.C. § 2254(b)(1)(A).  If the claim presented in federal court was never actually presented in state courts, but a state procedural rule now prohibits the state court from considering the claim, then it is considered exhausted but procedurally barred unless the petitioner can show cause for not asserting the claim and prejudice or that refusal to consider the claim would result in a fundamental miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 752-53 (1991).

In the instant case, Petitioner has never raised this claim in state court proceedings, either on direct appeal or during post-conviction proceedings, thus he has failed to fairly present this claim to the state courts, resulting in a default.  State procedural rules—Tenn. Code Ann. § 40-30-102(a), the post-conviction statute of limitations, and Tenn. Code Ann. § 40-30-102(c), the "one petition" limitation—now prevent him from asserting this claim in state court.   In addition, Petitioner has failed to demonstrate cause and prejudice or that refusal to consider his claim would result in a fundamental miscarriage of justice.  Because a habeas petitioner is required to exhaust state remedies by presenting the substance of his constitutional claim to the state courts prior to seeking federal habeas relief, and Petitioner did not present this claim to the Tennessee state courts, he is barred from presenting this claim in this federal habeas proceeding.

### C. Ineffective Assistance of Counsel

Petitioner asserts he was denied effective assistance of counsel at trial and on appeal. Petitioner raised an ineffective assistance of counsel claim during state post-conviction proceedings. To the extent Petitioner's federal habeas ineffective assistance of counsel claim is different from the specific claims raised and addressed by the state court, he has procedurally defaulted the new claims and habeas relief is **DENIED** as to the new claims since Petitioner has demonstrated neither cause and prejudice nor that a refusal to consider the claims would result in a fundamental miscarriage of justice.

Although Petitioner claims post-conviction counsel failed to raise all of these claims, "[t]he ineffectiveness or incompetence of counsel during . . . State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(I). Furthermore, Petitioner is not constitutionally entitled to effective assistance of counsel during a post-conviction proceeding; thus, an attack against post-conviction counsel cannot establish cause for procedural default. *Pennsylvania v. Finley,* 481 U.S. 551, 555-559 (1987).

The claims that are properly before this federal habeas Court are Petitioner's claims that he received ineffective assistance of counsel at trial and on appeal when counsel "(1) failed to request the removal of a juror, Daisy Foster; (2) questioned Marco Brooks about his family's criminal history to the detriment of Petitioner's case; (3) failed to adequately investigate Petitioner's case and prepare for trial; and (4) failed to object to the prosecutor's leading questions during Mr. Brooks' direct examination." *Paris v. State*, 2005 WL 1981495 (Tenn.Crim.App. Aug. 16, 2005) (unpublished).

1.    *Applicable Law*

The criteria for analyzing a claim of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668(1984). *Strickland* requires a defendant to demonstrate two essential elements: (1) counsel's performance was deficient ( i.e., counsel was not functioning as counsel guaranteed the defendant by the Sixth Amendment), and (2) counsel's deficient performance prejudiced the defense ( i.e., deprived the defendant of a fair trial rendering the outcome of the trial unreliable). *Id*. at 687-88; *see also McQueen v. Scroggy*, 99 F.3d 1302, 1310-11 (6th Cir.1996), *cert. denied*, 520 U.S. 1257 (1997); *Sims v. Livesay*, 970 F.2d 1575, 1579-81 (6th Cir.1992); *Flippins v. United States*, 808 F.2d 16, 17-18 (6th Cir.), *cert. denied*, 481 U.S. 1056 (1987).

To establish his attorney was not performing within the range of competence demanded of attorneys in criminal cases, a defendant must demonstrate the attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *McMann v. Richardson*, 397 U.S. 759 (1970). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir.1992); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.   With repect to the performance prong, the *Strickland* court instructs that:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 690 (internal quotation marks and citations omitted).

With respect to *Strickland's* prejudice prong, a petitioner must prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome." *Id.* at 694.

An ineffective assistance of counsel claim must satisfy both *Strickland* prongs, therefore, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* at 697.

In addition, under the AEDPA, this Court's review of the state court's decision is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (noting a "doubly deferential" standard applies to *Strickland* claims under the AEDPA). Thus, in order to prevail on this claim, Petitioner must make the additional showing that the state court's ruling that counsel was not ineffective constituted an objectively unreasonable application of *Strickland*. 28 U.S.C. § 2254(d)(1).

### a.    Removal of Juror Foster

Petitioner contends trial counsel was ineffective when he failed to request the trial court to remove Juror Foster from the panel after she reacted with alarm over a gesture made by a spectator during Mr. Brooks' direct testimony.  Petitioner contends there is nothing in the record to support trial counsel's assertion that he did request the removal of Juror Foster.

The trial court conducted a voir dire of Juror Foster after she reacted with alarm over a gesture made by a spectator during Mr. Brooks' direct testimony.  During a voir dire of the juror, she stated she knew the man who made the gesture and his conduct "kind of frightened" her.  Trial counsel asked her whether the incident was "going to influence [her] ability to find someone guilty or not guilty based on what [she] saw in the courtroom."  Juror Foster replied, "[n]o, not-huh uh, I just didn't like the way he was looking that's all." [Addendum 1D, Vol. 2 of 6, pp. 171-175].  The state post-conviction court accredited trial counsel's testimony that he timely raised concerns over the jurors reaction to the incident and the appellate court concluded Petitioner failed to demonstrate trial counsel's conduct was deficient in this instance.

Even assuming *arguendo,* however*,* that counsel was deficient for failing to request the removal of Juror Foster, Petitioner has not demonstrated such deficiency resulted in any prejudice to him as he has not demonstrated this juror was biased or that he was denied an impartial jury.  Consequently, Petitioner has not shown a reasonable probability that, but for counsel's failure to request the removal of Juror Foster, the result of the criminal proceeding would have been different and more favorable.  Accordingly, he is not entitled to habeas relief on this claim.

b.    *Inquiry into Mr. Brooks' Background*

Petitioner argues counsel was ineffective when he cross-examined Mr. Brooks about his and his family's involvement with the Jamaican drug trade.  According to Petitioner, "[s]uch actions by trial counsel had the effect of placing before the jury issues outside the record and alleged facts for which Petitioner was not on trial nor had been arrested for. Such declarations by trial counsel were objectively unreasonable and prejudiced Petitioner by denying him a fair and impartial trial." [Court File No. 2, p. 13-14].

During state post-conviction proceedings, trial counsel testified it would have been difficult to successfully portray Mr. Brooks as the shooter without going into his background. Counsel explained that questioning Mr. Brooks' about his background was necessary for strategic reasons.  Petitioner's fingerprints were on the duct tape used to bind the victim's body.  Trial counsel testified, "it was always [Petitioner's] position, and our position at trial, . . . that Petitioner helped [Mr. Brooks] dispose of the body because he was afraid of what the drug dealing Jamaican mafia would do to him if he didn't [follow the] marching orders from Marco Brooks."  Counsel's trial strategy was to demonstrate Petitioner had no motive to kill the victim because he would not have been permitted to assume a leadership role in the organization.  The state appellate court concluded that "[i]n light of the facts and circumstances existing at that time, the evidence does not preponderate against the post-conviction court's findings that trial counsel had developed a good trial strategy based on the evidence, and that his decisions as to how to conduct Mr. Brooks' cross-examination supported his strategy."  *Paris v. State*, 2005 WL 1981495, * 7.

Petitioner has not overcome the presumption that counsel's challenged action is sound trial strategy.  *Strickland v. Washington*, 466 U.S. at 689 ("[T]he defendant must

overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (internal quotation marks and citations omitted)). Based on the record before the Court, counsel's challenged conduct was reasonable and was not outside the wide range of professionally competent assistance. Moreover, even if counsel's decision to pursue such a defense was deficient, Petitioner has not demonstrated that counsel's performance was prejudicial to the defense.

> It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding. . . .The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 693-94.

In the instant case, Petitioner has not demonstrated that there is a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. Evaluating counsel's trial strategy based on his perspective at the time of trial, there is nothing in the record to support a conclusion that counsel's strategy was unreasonable. Having concluded that trial counsel's strategy to question Mr. Brooks about his Jamaican drug ties did not constitute deficient performance, the Court need not address the prejudice prong of *Strickland*. Nevertheless, the Court notes nothing before this Court indicates that absent this alleged attorney error, there is a reasonable probability the result of Petitioner's trial would have been different. Accordingly, Petitioner is not entitled to

habeas relief on his claim that counsel was ineffective when he inquired about Mr. Brooks' background.

<em>c.      Failure to Investigate and Prepare for Trial</em>

Petitioner argues trial counsel did not meet with him on an adequate number of occasions before trial. In addition, he claims counsel failed to adequately investigate his case. Specifically, he claims counsel failed to request investigative assistance and failed to interview all essential witnesses. In his habeas petition, Petitioner fails to indicate what information an investigator would have unearthed that would have assisted him during the trial of this matter, and he fails to identify the "essential witnesses" and their proposed testimony.

During state post-conviction proceedings trial counsel was unable to testify as to the exact number of times he met with Petitioner, but said they met once a week or every other week. Trial counsel described Petitioner as intelligent and capable, and an active participant in the meetings [Addendum 3, p. 22-23]. During the post-conviction hearing, Petitioner acknowledged trial counsel met with him and that trial counsel's strategy was "fair" [Id. at 4-5].

The appellate court concluded that Petitioner's claim was based more on trial counsel's failure to adequately investigate witnesses, but none of the witnesses Petitioner claims should have been called to testify at trial testified at the state post-conviction hearing. Trial counsel testified he had difficulties locating witnesses and the ones he located were reluctant to testify. Although Petitioner did not present the witnesses during state post-conviction proceedings, he testified Stephanie Wright and Jacobia Simpson would have testified that he and the victims were friends, and that there was no need for Petitioner to rob

the victim because the victim gave him money. The appellate court observed that the State's witnesses acknowledged the Petitioner and victim were friends and Mr. Brooks testified the victim gave Petitioner money, bought him things, and took him out to dinner. Thus, the appellate court affirmed the trial court's finding that counsel was effective and noted that Petitioner had not demonstrated that he suffered any prejudice.

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." *Black v. State*, 794 S.W.2d 752, 757 (Tenn.Crim.App. 1990). As explained above, counsel provided a reasonable explanation for not using as witnesses, Stephanie Wright and Jacobia Simpson. In addition, the trial transcript reflects defense counsel presented evidence of Petitioner's friendship with the victim and the victim's generosity in giving Petitioner money and buying him things. Nevertheless, even if counsel's decision not to call these two witnesses amounts to deficient performance, Petitioner has failed to demonstrate he suffered any prejudice. Indeed, the witnesses proposed testimony was mere speculation, as Petitioner failed to have them testify during the state post-conviction hearing. Consequently, Petitioner's claim that counsel was ineffective for failing to investigate his case and present witnesses must fail.

### d.     Failed to Object to Leading Questions

Next, Petitioner complains, without citing to any portion of the trial transcript to support this claim,  that counsel failed to object to the prosecutor's leading questions when examining Mr. Brooks, who was seventeen-years-old at the time of trial. The state appellate court, noting Petitioner's failure to cite to any portion of the trial transcript amounted to waiver of the claim, but nevertheless concluded that Petitioner failed to demonstrate counsel's

decision not to object to leading questions was deficient, or that prejudice resulted. *Paris v. State*, 2005 WL 1981495, * 8 (Tenn.Crim.App. 2005). Specifically, the appellate court concluded that "[t]rial counsel's decision not to interrupt Mr. Brooks' examination was a tactical strategy developed in light of the facts and circumstances surrounding that particular witness' testimony and the case as a whole." *Id*. at *9. The state appellate court also observed that Petitioner failed to allege any specific prejudice, but rather claimed the results of his trial would have been different if trial counsel had objected sooner. The appellate court concluded Petitioner had failed to establish trial counsel was deficient or that Petitioner was prejudiced.

During the state post-conviction proceedings trial counsel testified he was aware that some of the prosecutor's questions were leading at the start of Mr. Brooks' direct examination but he did not object because the questions dealt only with the development of background information, and he did not want to leave the jury with the impression that he was trying to prevent them from hearing evidence. Trial counsel did object when the prosecutor began asking Mr. Brooks about the events immediately prior to the shooting of the victim, stating, "I am going to object to this, Your Honor. I am going to start objecting to leading. I think I have been very liberal in not objecting so far." (Addendum 1D, p.108). The trial court instructed the prosecutor not to ask leading questions.

In addition, the record reflects that counsel did object to some of the leading questions presented to Mr. Brooks and, at one point during his testimony, counsel requested a mistrial [Addendum 1D, p. 109, 140, 149. As in the state post-conviction proceeding, Petitioner fails to identify, in this federal habeas proceeding, the questions to which counsel should have objected. Due to Petitioner's failure, he has not demonstrated either deficient performance

-30-

on the part of his trial counsel or prejudice as a result of counsel's failure to object to the leading questions. Failure to object at trial to leading questions is generally considered a tactical decision and counsel testified that it was in this case. *Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (failed to point out specific instances of leading and explain how objection would have resulted in a different trial outcome).

In this instance, Petitioner has not demonstrated that if counsel had objected, it would have resulted in significantly different trial testimony. Thus, there simply is no evidence before this Court demonstrating that Petitioner's right to a fair trial was infringed upon by the unidentified leading questions of which he complains. Accordingly, trial counsel's performance was not deficient and Petitioner suffered no prejudice as a result of trial counsel not objecting to leading questions presented to Mr. Brooks.

### D.     Jury Charge

Petitioner contends that the state trial court violated his constitutional rights when it instructed the jury on the unindicted offense of criminal responsibility. Specifically, Petitioner contends that the submission of the criminal-responsibility-of-another jury instruction amounted to a constructive amendment of the indictment. In addition, he claims there was a material variance between the indictment and the proof presented at trial. On direct appeal Petitioner simply raised this claim as a trial court error claiming there was no proof to justify the instruction; he did not cite to the Constitution or any case law. Indeed, on direct appeal Petitioner argued the instruction was improper because there was no evidence to support such an instruction.

A claim is not exhausted when it was offered in state court under a legal theory which is different than the legal theory under which the claim is offered in a federal habeas court. *See Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).   An issue that has not been raised in state court as a violation of the Constitution is not exhausted for purposes of habeas relief. *Stanford v. Parker*, 266 F.3d 442, 451 (2001).  When a petitioner fails to present his federal claims to the state courts in accordance with the state's procedural rules, he forfeits the right to federal habeas review of those claim unless he is able to demonstrate cause for his non-compliance and actual prejudice as a result of the claimed constitutional violations, *Engle v. Isaac*, 456 U.S. 107, 129 (1982), or that he is actually innocent so that the failure to review his claim would result in a fundamental miscarriage of justice.  *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). Although Petitioner filed a reply to Respondent's response, he failed to address his alleged procedural default (Court File No. 21, p. 9).   Accordingly, since neither cause and prejudice nor actual innocence has been demonstrated, federal review of this claim is precluded.

Nevertheless, even if this claim was not procedurally barred, Petitioner would not be entitled to an habeas relief because the criminal responsibility statute does not create an independent or separate crime, but rather simply abolishes the distinction between principal and accessory.   Under Tennessee law, an aider and abettor has the same liability as a principal.  *See State v. Hopper*, 695 S.W.2d 530, 535 (Tenn.Crim.App. 1985).   The criminal responsibility statute codified the common law theory, which "provided equal criminal liability for principals, accessories before the fact, and aiders and abettors."  *State v. Sherman*, 266 S.W. 3d 395, 408 (Tenn. 2008) (internal quotation marks and citations omitted).   Moreover,

the criminal responsibility statute (Tenn. Code Ann. § 39-11-402) "does not prescribe a separate and distinct crime; rather it works in synergy with the charged offense to establish a defendant's guilt through the actions of another. . . . A separate indictment for criminal responsibility is unnecessary when a defendant has been indicted for the primary offense." *Id*. (internal citations omitted).

The United States Court of Appeals for the Sixth Circuit has "expressly acknowledged that a defendant may be indicted for the commission of a substantive crime as a principal offender and convicted of aiding and abetting its commission although not named in the indictment as an aider and abettor without violating federal due process." *Hill v. Perini*, 788 F.2d 406, 407 (6th Cir. 1986) (state argued Hill was triggerman, defense raised evidence of aiding and abetting), *cert. denied*, 479 U.S. 934 (1986), (citing *Stone v. Wingo*, 416 F.2d 857 (6th Cir. 1969), *cert. denied*, 479 U.S. 934 (1986)).

As in the *Hill* case, here the state consistently argued that Petitioner was the triggerman and it was only on direct examination of defense witnesses that any evidence of aiding and abetting came before the jury. The theory of criminal responsibility was raised by the defense at trial. Since Petitioner presented evidence from which a reasonable juror could find him guilty of an aider and abettor, the court's instruction was proper. "[C]riminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may prove the defendant's guilt of the alleged offense[.]" *State v. Lemacks*, 996 S.W.2d 166, 171 (Tenn. 1999). "An indictment that charges an accused on the principal offense carries with it all the nuances of the offense, including criminal responsibility." *Id*. at 173.

Thus, an indictment need not explicitly refer to aiding and abetting to support a jury instruction based on a theory of aiding and abetting where evidence of such a theory was presented during a trial. Accordingly, since the state trial court did not err in instructing the jury on aiding and abetting as an alternative theory of liability, Petitioner is not entitled to habeas relief on this claim.

Additionally, the state court's resolution of this claim was proper. The state court concluded, as evidenced by the transcript of the criminal trial and acknowledged by defense counsel, that the defense theory was that Marco Brooks, rather than Petitioner, committed the actual murder. Thus, there was no error in charging the jury concerning the criminal responsibility of another, since the alternative theory of Marco Brooks being the killer would have allowed the jury to find Petitioner criminally responsible for Brooks' actions.

### E. Unconstitutional Use of Prior Conviction and Denial of Right to Present Mitigating Evidence

Petitioner contends that the state trial court violated his constitutional rights at sentencing when it relied upon his prior conviction for enhancement purposes and in denying him the right to present mitigating evidence. The Court will address these claims separately.

#### 1. Use of Prior Conviction

On direct appeal, Petitioner claimed the trial court erred in sentencing him on his first degree murder conviction. Specifically, Petitioner claimed it was error to use the statutory aggravating factor that he had been convicted of a prior felony pursuant to Tennessee Code Annotated § 39-13-204(i)(2), which reads, in relevant part:

No death penalty or sentence of imprisonment for life without possibility of parole shall be imposed but upon a unanimous finding that the state has proven beyond a reasonable doubt the existence of one (1) or more of the statutory aggravating circumstances which are limited to the following:

(2) The defendant was previously convicted of one (1) or more felonies, other than the present charge, whose statutory element involved the use of violence to the person. . . .

Petitioner was found guilty of first degree premeditated murder, first degree felony murder, and especially aggravated robbery and sentenced to life without parole after the jury concluded he had previously been convicted of one or more other felonies which involved the use of violence to the person.  Petitioner claims it was improper to use  the convictions as aggravating factors because he was convicted after the commission of the instant murder.

After Petitioner committed the instant murder of Michael Lawrence on August 24, 1998, he was convicted on September 11, 1998, of especially aggravated robbery and attempted first degree murder in an unrelated case.  Relying upon Tennessee Supreme Court precedent, the appellate court, concluding the issue was without merit, noted that "[o]ur Supreme Court has recently reiterated its oft-repeated holding that, 'so long as a defendant is convicted of a violent felony prior to the sentencing hearing at which the previous conviction is introduced, this aggravating circumstance is applicable.'" *State v. Paris*, 2003 WL 21748682, *6 (Tenn.Crim.App. 2003) (quoting *State v. Hodges*, 944 S.W.2d 346, 357 (Tenn. 1997) (emphasis in original)).

Under Tennessee law, the language in the statute, "previously convicted" has been defined as clearly indicating that the date of conviction, not the date of the commission of the crime, is the important factor.  "The order in which the crimes were actually committed is irrelevant, as long as the convictions have been entered before the sentencing hearing at which they are introduced." *State v. Copeland*, 2005 WL 2008177, * 23 (Tenn.Crim.App.

2005), (citing *State v. Caldwell*, 671 S.W. 2d 459, 465 (Tenn.), *cert. denied*, 469 U.S. 873 (1984)).  Tennessee law requires that the State prove prior criminal convictions that have been entered before the sentencing hearing, and that is what occurred in Petitioner's case. Petitioner was convicted of attempted murder prior to sentencing in this case.

Petitioner has not pointed to a Supreme Court case which holds that it is unconstitutional to use a prior conviction for criminal activity which was entered into prior to sentencing as an aggravating factor in the instant case.  In addition, the Court's research has not revealed any United States Supreme Court case prohibiting this sentencing scheme. Rather, the research revealed that the state court cases which have addressed similar issues have permitted the use of prior convictions for crimes committed after the crime upon which a defendant is being sentenced.  *Knight v. State*, 770 So.2d 663, 670 (Fla. 2000), *cert. denied*, 532 U.S. 1011 (2001) (determining it was proper to consider a subsequent crime as a prior violent felony since the statute referred to previous convictions and not previous crimes);*King v. State*, 390 So.2d 315, 320 (Fla. 1980), *cert. denied*, 450 U.S. 989 (1981)("The legislative intent is clear that any violent crime for which there was a conviction at the time of sentencing should be considered as an aggravating circumstance.");*Daugherty v. State*, 419 So.2d 1067 (Fla. 1982) (finding prior conviction for subsequent crime qualified as previous conviction); *State v. Steelman*, 612 P.2d 475 (Ariz. 1980) (rejecting a claim that out-of-state murder and robbery convictions should not have been considered as an aggravating circumstance since they were committed after the murders for which the defendant was sentenced to death).  *See also People v. Hendricks*, 737 P.2d 1350 (Cal.

1987) (holding that the order of the commission of the homicides was immaterial for implementation of a prior murder convictions special circumstance statute).

Furthermore, the state courts and courts in this Circuit have found that the term "previously convicted," which is used in state statutes to establish prior violent felony convictions as an aggravating circumstance, refers to a time prior to the sentence, as opposed to prior to the date of the commission of the capital offense. *Hodges v. Bell,* 548 F.Supp.2d 485, 549-550 (M.D. Tenn. 2008); *Ex Parte Coulter*, 438 So.2d 352 (Ala. 1983) (finding conviction of crimes occurring after capital offense was committed, but prior to sentencing hearing, could be used as proof of aggravating circumstance); *see also State v. Nichols*, 440 F.Supp.2d 730, 837-38 (E.D. Tenn. 2006) (finding an aggravating circumstance consisting of prior convictions for crimes committed after the murder).

Accordingly, because this claim does not entitle the Petitioner to relief unless the adjudication of the claim resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, see 28 U.S.C. § 2254(d), and because the state court's resolution of the claim (i.e., that using a conviction entered after he committed the instant crime did not violate his constitutional rights) was neither of these things, his claim will be **DISMISSED**.

2.    Denied Right to Present Mitigating Evidence

Petitioner also contends he was unconstitutionally denied the opportunity to present mitigating evidence at sentencing. Petitioner has never raised this claim in state court, either on direct appeal or during post-conviction proceedings.

Before a federal habeas court will address a petitioner's federal constitutional claim, he must have first fairly presented the claim to the state courts. *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995). A federal court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to the state courts due to a procedural defect or waiver, *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), unless a petitioner can demonstrate cause to excuse his procedural defect and prejudice to his defense, or actual innocence. *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

Because state procedural rules—Tenn. Code Ann. § 40-30-102(a), the post-conviction statute of limitations, and Tenn. Code Ann. § 40-30-102(c), the "one petitioner" limitation—now prevent him from asserting this claim in Tennessee court, and Petitioner has failed to establish cause and prejudice or actual innocence, the claim is barred from habeas review.

### F.    Actual Innocence and Cumulative Error

Petitioner contends he is entitled to habeas relief based on actual innocence and cumulative error. Initially the Court observes that Petitioner has procedurally defaulted these claims because he has never raised them in the state courts; state procedural rules prevent him from raising them now, and he has failed to demonstrate cause and prejudice or actual innocence to excuse his default.

In addition, Petitioner has not presented any evidence of his innocence. Petitioner's bare assertion that he is actually innocent of the offense for which he was convicted is insufficient to present a claim of actual innocence. The Supreme Court, assuming for the sake of argument that a free-standing actual innocence claim in a capital case was

permitted, noted that "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera v. Collins*, 506 U.S. 390, 417 (1993). First, the Court observes that this is not a capital case and, second, that the Supreme Court has never ruled a free-standing actual innocence claim is cognizable in a non-capital case. Nevertheless, assuming the claim is properly before the Court, Petitioner has presented no evidence of his actual innocence, thus falling far short of the extraordinarily high *Herrera* threshold standard. Accordingly, since Petitioner has failed to submit any evidence to establish that he is actually innocent of the murder charge, no habeas relief is warranted.

Likewise, no habeas relief is warranted on his cumulative error claim. Petitioner argues that the cumulative effect of all the errors he has raised violate his constitutional rights. Not only did Petitioner fail to raise this claim before the state court, as Respondent asserts, he has failed to establish any errors to cumulate. Assuming without deciding that cumulative error can form the basis for § 2254 habeas relief, Petitioner is not entitled to any relief because he has not shown the existence of any constitutional error at trial. Accordingly, his cumulative-error claim fails since there are no errors to cumulate. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (finding no errors to cumulate), *cert. denied*, 128 S.Ct. 1475 (2008).

### G.    Failure of Post-Conviction Judge to State Findings of Fact and Conclusions of Law

Petitioner argued on post-conviction appeal, as he does here, that the post-conviction court erred in not stating its findings of fact and conclusions of law in its order denying him post-conviction relief.

The state appellate court observed that Tennessee Code Annotated Section 40-30-211(b) requires a court to set forth all the grounds presented by the petitioner and its findings of fact and conclusions of law as to each ground in a written order or memorandum. However, the appellate court further observed that the purpose of the statute was to facilitate appellate review of the post-conviction court's decision, and it had previously concluded that a failure to make such findings in writing does not warrant reversal if the record is otherwise adequate for review. *Paris v. State*, 2005 WL 1981495, * 6. The state appellate court concluded that although "clearly sparse, the post-conviction court's findings of fact and conclusions of law are sufficient (although barely so) to allow for proper appellate review." *Id.*

The Supreme Court of the United States has established that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) and *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Rulings on what is required under state law are matters of state law and are not cognizable in federal habeas proceedings unless they are of constitutional magnitude; they must be so egregious as to deny a defendant a fundamentally fair trial. *See Clemmons v. Sowders*, 34 F.3d 352, 357-358 (6th Cir. 1994); *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir.), *cert. denied*, 513 U.S. 1061 (1994). To determine whether there was a constitutional violation, the Court must evaluate whether the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Petitioner must establish "actual prejudice" to obtain habeas relief. Id.

Because this claim attacks the post-conviction court's failure to adequately write its rulings as required by state law, Petitioner is attacking the procedures employed in collateral, state post-conviction proceedings and not the legality of his conviction or sentence. There is no constitutional mandate for a state post-conviction court to write its findings of facts and conclusions of law since there is no federal constitutional requirement that the state provide a means of post conviction review of state convictions. Accordingly, because Petitioner is unable to demonstrate the alleged shortcoming had any effect whatsoever on the jury's verdict, Petitioner is not entitled to an habeas relief on this claim.

## V. CONCLUSION

For the reasons stated in this Memorandum, Petitioner is not entitled to habeas corpus relief and his § 2254 petition and supplement [Court Docs. 1 & 2] is **DISMISSED**.

A separate judgment will enter.


_____ */s/Harry S. Mattice, Jr.* _____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE